v. Moses 24-1341. I understand we have Mr. Bachrock and you would like to reserve 3 minutes for rebuttal. Is that right? Yes, Your Honor. Sorry, I'm short. I need a moment. Yeah, please. Thank you, Your Honors. Samori Moses was a mountain of a man. About 6'4", all muscle, raised by his own mother to be a terror on the streets and to be, in fact, a pimp, for lack of a better term. This is what he was. An individual so imposing that if the most dangerous criminals were walking down the street in the other direction, they would move to the other side of the street to avoid him. That's the kind of man he is. An individual who a simple slap or multiple slaps can, in fact, kill, even if he did not mean them to. And, in fact, that's relevant here to both issues that are being raised on appeal. Because there is no dispute in this case that Mr. Moses did not mean to kill, did not intend to kill Ms. Foster. Ms. Foster was both his paramour and his employee. And by that, I do mean he was one of the women that he sex trafficked. And this is not a gentle case, not a genteel case. It is a terrible case. It's an, unfortunately, tragic case. But intent matters. Because intent matters to what the crime is. And what is it exactly that he pled guilty to? And what is it exactly that he should be sentenced to? Could we just, and I think, I appreciate your arguments, and they were, I thought, laid out in your brief. So why don't we get down to brass tacks. I understand that your attack on the conviction is twofold. You're attacking the knowing and voluntary nature of the plea. Yes. And you're attacking the adequacy of the factual basis. Am I correct that there are two parts to your argument? And they're interwoven, yes. Well, that's what I was wondering about. Because with your knowing and voluntary argument, normally I think of that as asking whether the defendant was apprised of the nature of the charge, by which I mean the elements of the offense. But I thought your brief arguably bled the factual basis issue into the knowing and voluntary argument. Could you explain that? I'm just trying to analytically understand. I understand the factual basis issue. Right. But I'm not sure I understand the nature of your knowing and voluntary. The argument, in essence, and if you look at the very precise language that he made when allocuting. So I intentionally inflicted serious physical injury on Leandra Foster, which approximately caused her death. A lot of thought went into the exact language that he used. And the question is whether or not that language is sufficient. So he knowingly understood that he assaulted someone and that as a result of the assault, he killed that person. However, is that enough to establish the offense when there was a defense to that conduct, which was not race? Now, that's a factual basis argument. And I understand that. I think there's a strong argument made by the defense and by the government that he waived it because it was a jointly crafted allocution that the defense affirmatively represented to the district court, you need not ask my client any questions because this is a sufficient factual basis. So I don't know how your client gets over that hump. I would argue forfeiture, not waiver, but I understand what you're saying. Well, no. I think if you say to the court, don't ask any more, this is enough, Your Honor. I think that's an affirmative representation. It's not it never came up. Oops. That's an affirmative saying this is enough. Both parties affirmatively said do not do so, Your Honor. Well, it doesn't matter what the government said. The government could have said anything they wanted. The question is whether the person now complaining about something that happened in the district court, affirmatively represented to the district court, this is how we want to play it, don't do anything differently. You can track the statutory language, Your Honor, that's enough. And the court said, maybe I need to ask a follow-up question. The representation of the defense was, no, you don't. What you can't waive, however, is whether or not the defendant, when the attorney crafts the allocution and when the attorney and the government work together on a plea, however it may be, the defendant is the one. Well, the statement was affirmatively that we've talked, we've worked closely with Mr. Moses about this. Exactly. And it's the understanding of the defendant. Did he understand that when he was pleading, that this language was also sufficient to satisfy manslaughter, that this was, in fact, sufficient for manslaughter? But how do you just analytically then break out for me the knowing and voluntary as opposed to, let's assume for the sake of argument that you've waived a chance to the factual basis. What's analytically left of the knowing and voluntary claim, just so I know where the box is? Sure. That he did not knowingly and voluntarily recognize that there was a defense to the charge of manslaughter conduct, the defense being crime of passion, which reduces the offense from murder to manslaughter. But how do you, it's normally not part of the allocution to get into defenses that can be raised. It's a question of whether the elements are there. And, you know, you don't have a, there are lots of defenses available. And when you plead guilty, you waive them. But you don't have to tick off a litany of defenses that are being waived as part of the allocution. How do you get past that part? Well, you still have to ensure that the defendant knowingly understood the elements of the offense and the nature of the charge. And he's pleading guilty here, believing that what he's saying is sufficient to satisfy only murder, not recognizing and never being asked by anyone, myself, my co-counsel, the government, or the court, whether or not he realizes that what he said here isn't actually murder. It's manslaughter, at least based upon the facts known at the time in the record. It was presented to the court as sufficient for the plea. And both sides adhered to that. And you were the co-counsel for him at the time. I was. I didn't recognize, I will candidly admit, I did not recognize that defense at the time we were negotiating. Okay. Well... I sort of said in my briefs, but... There's another doctrinal point that I think is worth getting discussion here. And that's the whole concept of invited error, where if the judge erred, was the error invited by the defendant, in which case, you know, if it was intentionally invited by the defendant, certainly. It was certainly not intentionally invited here. However, the focus, of course, and candidly, I admit this, I was counsel below, as was Mr. Houston, our focus throughout was, more than anything, was on the sentencing. Was it murder one or was it murder two? The parties crafted the allocution that we did, believing that it allowed both sides to argue what they believed to be the correct interpretation of those facts. So believing that. That's what everyone was discussing. So the knowing... So when discussing it, even with Mr. Moses, there was no conversation about, oh, wait, it's something else. The assumption was, it's murder one or murder two. And we believe it's murder two. But that seems to demonstrate exactly why waiver would apply here. Because it was a tactical, a very, probably very intelligent, strategic decision to say, look, you're going to lose the battle on guilt. Let's do it. Let's do it. Let's do it. Let's fight the battle of sentencing because maybe you can get a better sentence here. And if you admit it all and then you tell you, you can still leave open your version of the story, which is, it was not the impact of the blows that immediately killed the victim. But we'll simply admit that the impact of the blows, whatever, left her in such a shaky state that approximately caused her to slip and fall and hit her head. And that is a less gruesome story for the defendant in sentencing. And I think it sounds to me like an excellent strategic decision if you're the defense. It didn't work in the end, but not every strategic decision works. But that's why we talk about waiver when someone consciously makes a bid saying, look, this may win, this may lose, but I have a reason we're doing it. Then we usually say it's waiver, not forfeiture. Because it's something consciously undertaken with a knowledge of the risk, this may play out or not, and the chips will fall where they may. It was certainly a conscious decision to plead guilty and make the sentencing battle be about, is it murder one or murder two. What the defendant did not consciously consider was whether or not it was murder at all. It was killing. And as I said, this is not an individual who just went to college. He didn't go to Sarah Lawrence or Yale. He grew up on the streets. Killing is killing. And that much he knew he did. He didn't knowingly recognize, he didn't have the conversation about what about that next step, can you kill someone and it not be murder. But I am out of time, although there was a point, too. Why don't you take one extra minute. Okay. Thank you, Your Honor. And on point two, I recognize, again, it's an uphill battle because of the amendment, amendment 591. I can see that's really what I'm up against. The question becomes whether or not. Since you're on the point, I thought the district court said expressly, guidelines, schmied lines, I would oppose the same life sentences anyway. So aren't you also up against harmlessness? I guess I'm not really sure. I'm also up against harmlessness. Okay. All right. Very good. I mean, however, there is numerous Second Circuit cases cited in the brief and elsewhere that says that the lodestar of sentencing remains no matter what language the judge says, you still have to consider the starting point because that does make a difference. And if it's the starting point is the murder two guideline versus the murder one guideline, that means the starting point is 360 months to life rather than a life, which means that he would, if he got a 30-year sentence, he would actually walk free someday. He's already been in jail for about nine years at this point. So that's very real that he would get an opportunity, assuming he lived throughout jail, but that he would be free again. So there is a qualitative difference there, and the starting point does matter and should overcome harmless error. But on 591, obviously, 591 makes the guidelines mandatory. It makes the cross-section mandatory. But it can only be constitutional if it's constitutional as applied. And that is the case for numerous statutes. I can give an example. Section 702 of the foreign law. Cross-reference is unconstitutional? Mandatory cross-reference is unconstitutional? As applied. Even though it's advisory? The whole thing is advisory? And a judge can ignore it? Well, 591 states that you have to start with whatever that may be. Right. But Booker says you can also ignore the guidelines. You can just say, you know what, thank you for the advice, but not interested. Well, if that's the case, then it should have been ignored because it really, the facts support murder two. The facts do not support murder one. Simple as that. Trying to keep it short. No, I appreciate that. And we'll have you back for three minutes of rebuttal. Thank you. Why don't we hear from the government? We have AOC Siegel. May it please the Court, Jonathan Siegel for the United States. I also represented the government below. I would like to start on the issue of knowing, voluntary, and intelligent. And I do think that they are related, as I think we've all touched on. But the requirement for a plea to be knowing and intelligent and voluntary is that the defendant understands the elements. And the record here is clear and I think really undisputed that the defendant did understand the elements. It was explained by the judge. It was listed in the indictment. He confirmed he'd read the indictment. It's not about the elements, but about a defense. And the law in this circuit is that you do not have to advise a defendant of any defenses during a plea allocution in order for it to be knowing, voluntary, and intelligent. And that's the Smith case, which is cited at pages 28 and 49 of the government's brief. And that case explicitly addresses this issue and explicitly holds there is no requirement to advise a defendant of a defense during a plea allocution in order for it to be knowing, intelligent, and voluntary. And that's to say nothing of the fact that this is plain error, where certainly where this is where under precedent there is no error at all, there cannot be plain error. I think it's also important to note, while Mr. Bachrach said that defense counsel didn't know about this defense or hadn't thought about this defense, they actually explicitly mentioned this defense and raised this defense as a possibility in their sentencing memo, but then explicitly said, we don't want to raise it. We're waiving it because we want to fully accept responsibility. So I think under every prong of plain error, the challenge, the knowingness and voluntariliness and intelligence of this plea fails. And then to the fourth prong of plain error, we could look at events even post-dating the plea to make these kind of determinations. Both the third and the fourth. As to whether this affects his substantial rights, whether he would have pleaded guilty anyway had he been advised of this defense, the fact that at sentencing, in his memo, he says, there is this possible defense that we could have raised at trial, but we're not raising it. Do you have a citation for that? I do, Your Honor. It's at docket entry 115, page 32, footnote 18. And I'm not going to read that. I'm just going to read the citation. And I apologize. I think there's both a sealed and an unsealed version of the defense memorandum. 115 is the sealed version, but it's on page 32, footnote 18, which is both in the sealed and unsealed version of the defense.  It's not in the appendix, but it's cited in the district court docket. Did you mention this in your brief? Yes, repeatedly. I can give you a page later for that as well, if that would be helpful. Oh, I think I have it here, page 14. I'm going to... Yeah. No, you mentioned it on page 14 of your brief. Thank you. I got it. Turning to the factual basis, I think our first argument, which has been touched on, is that that was fairly clearly and explicitly a good reason. As Judge Nardini noted, there was a real tactical benefit to getting past the plea and getting to sentencing and to really say as little as possible to not get into the really gruesome and grisly facts of this case. When the judge asked, is there more that's needed, the defense said, no, there is no more that is needed. At sentencing, when this issue began to crystallize, when the defendant was adhering to his claim that she had slipped in the shower, the government said, that seems to be a little bit in tension with your plea and you can't do that. And again, at sentencing, they said, this is not in tension with our plea. Our plea is sufficient. We stand by our plea. At every opportunity where this was raised, the defense did waive it. They waived it strategically and tactically. And the fact that it didn't work and he still ended up with a life sentence is not a basis to walk away from it now. But I think also on the merits, it's important to address that really it fails for the exact same reasons as the attack on the knowing and intelligent and voluntary nature. The same Smith case that I cited previously also addresses the factual basis requirement and says that you don't need to rule out every possible defense in order for there to be a factual basis. At this plea, he allocuted that he caused, he proximately caused her death. He did it in the course of sex trafficking, that he did it with the intent to cause serious physical injury, and that he acted recklessly with total disregard for her life. That establishes all of the elements that provides the factual basis for every element of the murder count that he was convicted of. And again, there isn't really a dispute about that. The dispute is whether he offered a factual basis to defeat a defense. And the law in the Second Circuit is that you don't have to. That's particularly true here where there was no mention of this possible defense at the plea hearing or in anything in the record at the time of the plea. And this Court's precedent to make clear when assessing the factual basis, you look at the record that exists at the time of the plea. So for that reason, in addition to waiver, there wasn't any error at all. There certainly wasn't plain error. And then moving on to the third prong of plain error of does the record overall support the fact that there was a factual basis? Ultimately, at sentencing, there was the grand jury testimony admitted of Jane Doe 8 where she discussed the defendant's confession where he admitted to her beating Leandra Foster to death. The Court explicitly stated that she did not credit the defendant's version of events and did credit Jane Doe 8's version of events. Based on that, there is no prejudice to the defendant's substantial rights because the full record, which can be looked at on the third prong of plain error review, does show that there was a factual basis and that he is, in fact, guilty of murder. And then finally, as to the fourth prong of plain error review, here I think the same arguments for waiver, even if somehow he escapes waiver, really do weigh heavily in the fourth prong of plain error review about the respect for the legal process and fundamental fairness. The idea that someone can come in and say, I want to plead guilty. This is sufficient. I don't want to go to trial. I want to accept responsibility. And then, when it doesn't work, after the victims finally get closure, after, for some of them, decades or over a decade, to turn around and say, no, I want to do it all over again because I got a life sentence, that would really undermine respect for the law. So waiver or invited error, however you want to frame it, that argument, in your view, does that go to both of the arguments contesting the plea or just the factual basis argument? I think the waiver is really only for the factual basis. But for the voluntary and intelligent knowing and knowingness, there's just so clearly no error and no plain error under Smith. I understand you're saying that you don't think there's merit to that, but you would only apply the waiver or invited error, however you want to frame it, as to the factual basis component of that argument. That's right. Okay. I just want to understand that. Finally, as to the sentencing claim, while the government does submit that Judge Ammon did correctly calculate the guidelines and that, under Amendment 591, that it was mandatory to do it and, as Judge Nardini pointed out, to the extent there is any sense that that was inappropriate to the facts, it was purely advisory and the judge could have varied from it. But the harmlessness here is really insurmountable. Judge Ammon made an absolute explicit record. I am aware of this issue on the guidelines. I am aware of this specific issue on the guidelines. And although I have calculated it this way, it does not matter. Even if the defendant was right, I would have imposed a life sentence no matter what. And I think the key case for that, we cite this on page 57 of our brief. It's United States v. Darrah, D-A-R-R-A-H, which is a case from just last year. And it says that there will be a finding of harmlessness where the error dealt with a single enhancement specifically identified by the district court and imposed with the explicit and unambiguous declaration that the enhancement did not affect the ultimate sentence. That is exactly the facts here. So for that reason, both on the merits and on the fact that this is clearly harmless, the sentencing challenge should be rejected. Okay. Thank you very much. Thank you. Mr. Buttrack, you have reserved three minutes for rebuttal. If there is anything you would like to add. Just briefly, Judge, a correction. The government spends a considerable amount of time in their brief discussing the fact that we raised the provocation defense and said the provocation was something we weren't going to raise. That's not what we were talking about here. We're talking about heat of passion defense, which is a different defense. So, yes, we waived provocation. We didn't waive heat of passion. That argument is different and distinct. With respect to sentencing, Your Honor pointed out, and my colleague here, Mr. Siegel, just pointed out, that because of Booker, the guidelines are never mandatory. That's true. But if you read the sentencing transcript, that's not clear to Judge Amon because during the sentencing, she believes that because only one guideline is listed in the cross-reference sheet for 18 U.S.C. 2245, and that one is the one related to first-degree murder, 1A.1.1, she believed she had to apply that. That is incredibly clear at sentencing. She didn't think she had any discretion to be able to vary from that and apply 1A.1.2, which is, excuse me, 2A.1.2, which is for murder too. Well, to depart from it. What? She believed... She had no basis within the framework of the guidelines to depart. You're not suggesting she misunderstood Booker. No, what I'm suggesting is that she... They vary usually to mean something as an outside-the-guidelines framework. No, no, no. She didn't misunderstand Booker. She believed that the guideline she was required to apply was, in fact, and could only be the guideline associated with Murder 1. But here, the facts don't support Murder 1 since the defendant, as the government conceded, it was not premeditation. The government also concedes that none of the enumerated offenses that are the alternative... Assume for the sake of argument that there was no heat of passion. I'm sorry? Assume for the sake of argument that this was not done in the heat of passion. Because I know that's your position. Assume it's not. Would the factual basis have been adequate? At the time of the plea? Assuming that there was no heat of passion. I know that's a hypothetical that you don't want to accept. In an alternate universe where there was no heat of passion, would this be an adequate factual basis? It doesn't address it. Because the allocution doesn't address state of mind. It specifically says, I intended to hurt someone. It doesn't say I intended to kill someone. It doesn't address whether or not he did so in a cool-headed mind, in a cool mind, where he in fact reflected at least for a short period of time. Those are the requirements under Mulder, United States v. Mulder. Those are the requirements of first-degree murder. The allocution does not touch on, did he have a cool mind? Did he think about it? Quite the contrary. He never says, he never even says in the allocution that he killed her. Regardless of the term. You know, murder and... There's a difference between murder and manslaughter. Killing is killing. He doesn't even say that. He simply says, I assaulted her and as approximate cause, she died. Okay. All right. Well, thank you very much to both sides for your argument. We appreciate both counsels appearing today. We will take the case under revisal. Thank you all. Thank you.